IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| M AMMAR ALKATIB<br>1566 Saddle Brook Lane, Apt. 2B<br>Westlake, OH  44145<br><br>      Plaintiff,<br><br>v.<br><br>PROGRESSIVE PARALEGAL<br>SERVICES<br>29550 Detroit Road, Suite 500<br>Westlake, OH  44145<br><br>and<br><br>PROGRESSIVE PARALEGAL<br>SERVICES, LLC<br>24700 Center Ridge Road, Suite 310<br>Westlake, OH  44145<br><br>and<br><br>FADI KAYYALI, INC.<br>24700 Center Ridge Road, Suite 310<br>Westlake, OH  44145<br>    *ALSO SERVE*:<br>    FADI KAYYALI, INC.<br>    c/o Fadi Kayyali, Statutory Agent<br>    194 Somerset Lane, Apt. 1<br>    Avon Lake, OH  44012<br><br>and<br><br>FADI A. KAYYALI<br>39171 Woodland Trail<br>Avon, OH  44011<br><br>      Defendants. | CASE NO.: 1:18-CV-2859<br><br>JUDGE<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**(Jury Demand Endorsed)** |

For his Complaint against Defendants Progressive Paralegal Services ("PPS"), Progressive Paralegal Services, LLC ("PPSL"), Fadi Kayyali Inc.("Fadi Inc.") and Fadi A. Kayyali ("Mr. Kayyali") (collectively referred to as "Defendants"), Plaintiff M Ammar Alkatib ("Plaintiff or Mr. Alkatib"), by and through counsel, states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff M Ammar Alkatib is an individual residing in Westlake, Ohio and is a former employee of Defendants.

2. Upon information and belief, Defendant Progressive Paralegal Services is a foreign company who maintains an office in Cuyahoga County, Ohio, transacts business in Ohio and engages in interstate commerce.

3. Upon information and belief, Defendant Progressive Paralegal Services, LLC is foreign company who maintains an office in Cuyahoga County, Ohio, transacts business in Ohio and engages in interstate commerce

4. Upon information and belief, Defendant Fadi Kayyali Inc. is a domestic corporation who maintains an office in Cuyahoga County, Ohio, transacts business in Ohio and engages in interstate commerce

5. Upon information and belief, Defendants PPS, PPSL and Fadi Inc. have gross annual sales of $150,000 or more.

6. Upon information and belief, Defendants PPS, PPSL and Fadi Inc. have gross annual sales of $500,000 or more.

7. Upon information and belief, Defendant Fadi A. Kayyali is an individual who resides in Ohio and owns, operates and/or manages PPS, PPSL and/or and Fadi Inc.

8. At all material times herein, Defendants were Mr. Alkatib's employer pursuant to 29 U.S.C. §201, *et seq.*

9. At all material times herein, Defendants were engaged in related activities performed through unified operation of common control for a common business purpose and, at all material times, were an enterprise within the meaning of 29 U.S.C. §203(r).

10. At all material times herein, Defendants were an enterprise engaged in commerce or the production of goods for commerce.

11. At all material times herein, Defendants had employees engaged in commerce or the production of goods for commerce, or had employees handling, selling or otherwise working on goods or materials that have been moved or produced for commerce.

12. At all material times herein, Mr. Alkatib was a covered employee pursuant to 29 U.S.C. §201, *et seq.* as he was engaged in commerce during his employment with Defendants.

13. Jurisdiction is proper over Defendants pursuant to 28 U.S.C. §1331 in that Mr. Alkatib is alleging federal law claims arising under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, and other federal laws.

14. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

15. The material events giving rise to the claims made in this Complaint occurred in Cuyahoga, County.

16. Venue is proper in the United States District Court for the Northern Division of Ohio, Eastern Division, because it is the Court for the district, division and county within which a substantial part of the events giving rise to this Complaint occurred.

17. This Court is a Court of general jurisdiction over all subject matters of this Complaint and the claims presented herein.

## FACTUAL ALLEGATIONS

18. Mr. Alkatib is a foreign national and legal citizen of Aleppo, Syria.

19. Aleppo is one of the most dangerous cities in the world because of the ongoing civil war that has led to the death of approximately 500,000 people, including civilian men, women and children. Non-combatant citizens of this dangerous city have been victims of a range of senseless acts, including, but not limited to, destructive chemical warfare that has been condemned universally by the global community.

20. As a result of the daily threat to life in Aleppo, Mr. Alkatib did everything in his power to ensure that his family could live in the safest environment possible and to allow his kids to have the potential for a bright future.

21. In or around 2014, Mr. Alkatib was in Dubai, a city in the United Arab Emirates, and attended a seminar presented by Mr. Kayyali where he lectured about the ability to obtain an L1 Visa as a manager of an international company opening a new office in the United States.

22. Following this presentation, Mr. Alkatib went to dinner with Mr. Kayyali and they continued to discuss his prospects of obtaining an L1 Visa. At that time, Mr. Alkatib was employed by United Ventures and the company was contemplating the opening of a U.S. office.

23. In or around 2015, United Ventures decided to open a U.S. office and contracted with Mr. Kayyali to complete the paperwork necessary to open the office and secure an L1 Visa for Mr. Alkatib. In addition, Mr. Kayyali located and secured office space for United Ventures in Cleveland, Ohio and identified himself as an agent of the company in the articles of the organization as well as the IRS Form SS-4.

24. In or around September 2015, Mr. Alkatib moved to Cleveland, Ohio to open the new U.S. office for United Ventures under an L1 Visa secured by Mr. Kayyali on his behalf. Soon after, in or around January 2016, Mr. Alkatib's wife and kids moved to Cleveland to unite their family and start a new life without the prospects of war and death overshadowing every day.

25. For approximately two years, Mr. Alkatib managed the United Ventures Cleveland office until the company decided to close the office in or around December 2017. The closing of this office was a major setback for Mr. Alkatib and the safety of his family because his Visa was contingent upon him maintaining his employment in the U.S.

26. Mr. Alkatib was terrified about he and his family being forced to return to a war-torn country where death was a stark reality that citizens faced every single day. As a result, he began frantically and desperately searching for another job opportunity that would allow him to secure a work visa and remain in the U.S. with his family, who had already started a new and productive life in Cleveland, Ohio.

27. While Mr. Alkatib was searching for a new job opportunity, Mr. Kayyali reached out and offered him a position with Defendants. When Mr. Kayyali made the offer, he was well aware that Mr. Alkatib was in dire straits and would do virtually anything to secure a new job to protect the safety and welfare of this family so he seized on this vulnerability in reaching an employment agreement with Mr. Alkatib.

28. To consummate the employment agreement, Mr. Kayyali offered Mr. Alkatib a position with Defendants as an International Sales Associate with a starting annual salary of $71,094.00 and Mr. Alkatib agreed to these contractual terms of employment. Unbeknownst to Mr. Alkatib, however, Defendants had no intention of fulfilling their promises at the time this

agreement was made. Instead, Defendants made these false representations to induce Mr. Alkatib to accept the employment.

29. In or around July 2017, Mr. Alkatib began working for Defendants and his duties included, but were not limited to, marketing, promoting and implementing sales plans for Defendants' immigration business. At all relevant times, Mr. Alkatib performed these duties on behalf of Plaintiff in compliance with their employment agreement.

30. As Mr. Alkatib's employers and job sponsor, Defendants submitted an I-140 work petition to the USCIS on his behalf and secured an approval, which was the first step to getting a Green Card for Mr. Alkatib now that he was employed. In addition, Mr. Alkatib's wife filed an asylum petition due to the extremely dangerous conditions in Aleppo, Syria.

31. After months of agonizing about being deported to a war zone, Mr. Alkatib was relieved to finally secure employment and start processing his immigration adjustment of status to permanent resident via Green Card.

32. Mr. Alkatib's relief was short-lived and, from the very start of his employment, it became clear that Defendants never intended on honoring their contractual promise to pay Mr. Alkatib's annual salary of $71,094.00.

33. Over the first six pay periods of Mr. Alkatib's employment, Defendants failed to pay him on three separate occasions and never offered an explanation for the failures.

34. In response to Defendants' failure to pay him for his services, Mr. Alkatib – on multiple occasions – requested that Defendants refrain from engaging in fraudulent and illegal conduct and comply with their legal obligations to pay his salary consistent with their employment agreement.

35. In total, Defendants only made three payments to Mr. Alkatib during their employment relationship and only one of those payments was made on time.

36. Relying on Mr. Alkatib's desperation to secure his permanent residency (Green Card), Defendants denied his request for properly owed back wages and further retaliated against him by refusing to remit any further payments for his services for more than a year. Stated plainly, Defendants unlawfully and intentionally engaged in a system of peonage, a form of debt slavery outlawed by Congress pursuant to the Peonage Abolition Act of 1867, by forcing Mr. Alkatib to provide services for free in order to receive his Green Card.

37. In or around October 2018, Mr. Alkatib again confronted Defendants about their failure to pay his wages for more than a year and, in response, Defendants took their retaliation to another level by refusing to provide any further assistance securing his Green Card and terminating his employment.

38. Mr. Alkatib was devastated by Defendants' wrongful conduct and they knew that their actions would cause him severe mental and emotional distress.

39. To date, Defendants, as employers, have wrongfully failed to remit substantial payments owed to Mr. Alkatib for services he performed on their behalf as an employee, despite an agreement to do so.

40. In response to Mr. Alkatib's request for compensation rightfully owed to him, Defendants engaged in systematic retaliation to suppress his rights and inflict harm.

41. Accordingly, Defendants fraudulently induced Mr. Alkatib to enter into a verbal agreement that was breached when Defendants failed to compensate him consistent with their employment agreement and unlawfully withheld payments he was entitled to receive.

## COUNT I: FRAUDULENT INDUCEMENT/FRAUD

42. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

43. Defendants represented to Plaintiff that he would receive an annual salary of $71,094.00 to compensate him for services he performed on behalf of Defendants as an employee.

44. At the time Defendants made this representation to Plaintiff, they were fully aware of its falsity or had an utter disregard for its truthfulness. Defendants never had any intention of honoring the representation and agreement they made with Plaintiff.

45. Defendants made this false representation for the express purpose of inducing Plaintiff to provide valuable and wide-ranging services to Defendants and to enter into an oral agreement under false pretense without providing any compensation.

46. Plaintiff justifiably relied on Defendants' representations and promises and were severely harmed as a result.

47. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT II: BREACH OF CONTRACT

48. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

49. Plaintiff and Defendants expressly agreed to an oral contract to create an employment relationship between the parties that would compensate Plaintiff with an annual salary of $71,094.00.

50. Plaintiff performed his contractual obligations by providing valuable and wide-ranging services to Defendants.

51. Despite the parties' agreement, Defendants breached the employment agreement by failing to compensate Plaintiff for the services he performed on behalf of Defendants.

52. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

### COUNT III: PROMISSORY ESTOPPEL

53. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

54. Defendants expressly promised to sponsor Plaintiff's work visa and pay him an annual salary of $71,094.00 for work he performed for Defendants.

55. Plaintiff reasonably and justifiably relied on Defendants' promise to his detriment.

56. Plaintiff's reliance on Defendants' promises was foreseeable.

57. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

### COUNT IV: FAILURE TO PAY WAGES IN VIOLATION OF FLSA AND OHIO WAGE LAWS

58. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

59. Defendants employed Plaintiff to perform valuable services on their behalf. As an employee of Defendants, Plaintiff was entitled to be compensated for his work, including, but not limited to, the prevailing minimum wage rate.

60. Plaintiff, as an employee, performed his employment duties for the benefit of Defendants, his employers.

61. Defendants, as employers, failed to compensate Plaintiff, as an employee, for the work he performed for Defendants in violation of the FLSA and Ohio Wage Laws.

62. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

### COUNT V: FAILURE TO MAKE TIMELY WAGE PAYMENTS IN VIOLATION OF FLSA AND OHIO WAGE LAWS

63. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

64. The FLSA and Ohio Wage Laws require an employer to make semi-monthly wage payments and/or wage payments for any workweek at the regular payday for the period in which the workweek ends.

65. Defendants failed to comply with their obligations to make timely payments to Plaintiff.

66. Plaintiff demanded that Defendants comply with their legal duties and make timely payments in compliance with the FLSA and Ohio Wage Laws.

67. Defendants refused to make payments, let alone timely payments, to Plaintiff for the work he performed on their behalf.

68. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT VI: RETALIATION IN VIOLATION OF THE FLSA AND OHIO WAGE LAWS

69. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

70. The FLSA and Ohio Wage Laws have a clear antiretaliation provision that prevents employers from retaliating against current or former employees who complain about wage and hour violations.

71. Plaintiff engaged in conduct protected by the FLSA and Ohio Wage Laws by putting Defendants on notice that they were in violation of wage and hour laws for failing to compensate him for his work and refusing to do so on a semi-monthly basis.

72. In response to Plaintiff's wage and hour complaints, Defendants retaliated against him by refusing to provide any further assistance in securing a work visa and terminating his employment.

73. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT VII: UNJUST ENRICHMENT

74. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

75. Plaintiff conferred a significant benefit upon Defendants by providing them with valuable and wide-ranging services.

76. Defendants are well aware of the benefits Plaintiff conferred upon them and it would be unjust for Defendants to retain these benefits without paying Plaintiff for his services.

77. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

**COUNT VIII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

78. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

79. Pursuant to the Peonage Abolition Act of 1867, 18 U.S.C. §1581-1592 (relating to peonage, slavery, and trafficking in persons), 18 U.S.C. §1351, *et seq.* (relating to fraud in foreign labor contracting), 22 U.S.C. §7101, *et seq.* (relating to trafficking protection for victims) and 18 U.S.C. §1427, et seq. (relating to the sale of naturalization or citizenship papers) and other state and federal laws, there is clear public policy against engaging in a system of peonage/debt bondage, recruiting foreign workers under false pretense and wrongfully selling naturalization or citizenship papers.

80. Plaintiff complained to Defendants about their peonage/debt bondage system, recruiting foreign workers under false pretense and wrongfully selling naturalization or citizenship papers.

81. In violation of public policy, Defendants retaliated against Plaintiff for complaining about their peonage/debt bondage system, recruiting foreign workers under false pretense and wrongfully selling naturalization or citizenship papers.

82. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83. Plaintiff incorporates by reference all the allegations contained in the preceding paragraphs of the Complaint.

84. Defendants intentionally and/or with reckless disregard inflicted severe emotional distress on Plaintiff.

85. Defendants' conduct was extreme and outrageous because they subjected Plaintiff to a form of indentured servitude under the real and serious threat of being deported to a war zone if he did not pay for and/or the work off debt imputed to him for Defendants' sponsorship of his work visa.

86. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe emotional, economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

　(i) Requiring Defendants to abolish their peonage system and wage and hour violations.

　(ii) Creating a process for the prompt investigation of peonage and wage and hour complaints.

　(iii) Requiring mandatory and effective training for all employees and supervisors about Defendants' unlawful peonage system, wage and hour violations and appropriate corrective actions.

(iv) Requiring allocation of significant funding and trained staff to implement all changes within two years.

(b) For an award against Defendants of compensatory and monetary damages to compensate Plaintiff for breach of contract, wage and hour violations, emotional distress, personal injury and other consequential damages, in an amount in excess of $500,000 per claim to be proven at trial;

(c) For an award of punitive damages against Defendants in an amount in excess of $1,500,000;

(d) For an award of liquidated damages allowable under law;

(e) For an award of reasonable attorney's fees and non-taxable costs for Plaintiff's claims as allowable under law;

(f) For an award of the taxable costs of this action; and

(g) For an award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ F. Allen Boseman, Jr.*
Bradley A. Sherman (0063906)
F. Allen Boseman, Jr. (0084103)
SHERMAN BOSEMAN LEGAL GROUP, LLC
800 West St. Clair Avenue, 4th Floor
Cleveland, OH  44113
Telephone:  216.239.1414
Facsimile:   216.239.1316
Email:  bradley@shermanboseman.com
           allen@shermanboseman.com

Attorneys for Plaintiff
AMMAR ALKATIB

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Ammar Alkatib demands a trial by jury on all issues so triable and by the maximum number of jurors permitted.

                                              */s/ F. Allen Boseman, Jr.*
                                              F. Allen Boseman, Jr.

                                              One of the Attorneys for Plaintiff
                                              AMMAR ALKATIB